## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAWN THOMPSON, <br><br> *Plaintiff*, <br><br> v. <br><br> EVOLVE BANK & TRUST and <br> PENNYMAC LOAN SERVICES, LLC, <br><br> *Defendants*. | Case No.: 4:23-cv-11035-MRG |

## MEMORANDUM & ORDER DISMISSING CASE

**GUZMAN, D.J.**

## I.    INTRODUCTION

This is a dispute about the origination of a residential mortgage and the subsequent sale of that mortgaged property.  Pro se Plaintiff-mortgagor Dawn Thompson alleges that Defendant-original mortgagee Evolve Bank & Trust ("Evolve") and Defendant-successor mortgagee PennyMac Loan Services, LLC ("PennyMac") acted unlawfully in various ways during the mortgage origination process and the subsequent life of the mortgage that entitle her to various forms of relief, including the entire value of the loan, as well as compensatory and punitive damages.  The Defendants moved separately under Fed. R. Civ. P. 12(b)(6) to dismiss all the counts against each of them.  [ECF No. 7; ECF No. 47].  By previous electronic order, the Court **GRANTED** PennyMac's motion to dismiss.  [ECF No. 34].  This Memorandum and Order (a) provides the Court's reasoning for granting PennyMac's motion and (b) analyzes the merits of and ultimately **GRANTS** Evolve's motion to dismiss.  Finally, this Memorandum and Order disposes

1

of other motions pending on the docket, including any and all Motions for Extension of Time filed by Plaintiff. [ECF No. 43, 44, 51, 55, 56, 57, 58, 59, 60, 63, 65, 66, 67, 69, 71, 72, 73, 74, 75, 76, 77, 78, 79]. For the reasons that follow, this case is **DISMISSED**.

## II.     BACKGROUND

### a.     Facts Alleged[1]

#### i.     Plaintiff Applies for a Mortgage

At the time of her Original Complaint, Plaintiff was a fifty-one-year-old single woman. [ECF No. 1-1 at 2]. She is an accountant and former special needs teacher. [Id.] In September 2015, Plaintiff applied for a mortgage from Evolve in connection with her efforts to purchase a home – specifically, a bank-owned,[2] foreclosure property located at 2 Robertson Road in Worcester, Massachusetts. [Id. at 11]. This application process required her to provide Evolve[3] with copies of financial documents including her tax returns, bank statements, paystubs, etc. [Id.] After presenting these documents, Evolve "assured" her that she could afford to take on the mortgage. [Id.] Evolve listed Plaintiff's monthly income as $3,293.00 on her Uniform Residential

---

[1] Except where otherwise noted, the following relevant facts are drawn from the complaint – the factual allegations of which are assumed to be true. Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014). The Court has also considered those "'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice.'" Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (alterations in original) (quoting In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 20 (1st Cir. 2003)).

As noted infra, there is a small procedural wrinkle at play. Plaintiff amended her complaint after the Court granted PennyMac's motion to dismiss, meaning that the facts alleged and causes of action facing PennyMac were not identical to those facing Evolve. Accordingly, the Court has bifurcated its factual summary such that the alleged facts that are unique to that complaint, [ECF No. 29-1 (the "Amended Complaint")], are described separately from those contained in original complaint, [ECF No. 1-1 (the "Original Complaint")].

[2] In her Amended Complaint, Plaintiff clarified that the selling bank was non-party Freddie Mac. [ECF No. 29-1 at 6].

[3] Specifically, to a "loan originator" at Evolve named Mr. Gary Bates.

Loan Application although Plaintiff now avers that her monthly income never rose above $2,992.78 during the period between April 2015 and September 2015.  [Id. at 12].  Plaintiff claims that she "did not notice" the inaccuracy in her monthly income and ultimately signed the mortgage application.  [Id.]

       **ii.**      **Plaintiff Purchases the Mortgaged Property**

On September 4, 2015, Plaintiff's real estate agent informed her that the bank selling the Robertson Road property had accepted her offer to purchase the home.  [Id. at 5].  Four days later, Plaintiff's agent notified her that the selling bank had made some, unspecified "unilateral changes" to the offer before accepting it. [Id.] Although Plaintiff knew about these alleged changes, Plaintiff decided to ultimately proceed with the purchase of the property on the allegedly revised terms because she "felt forced to accept the seller's changes when the seller would not renegotiate to more acceptable lower terms." [Id.]  The next day (i.e., on September 9, 2015), Plaintiff's agent electronically sent her disclosure documents to review and sign prior to closing.  [Id. at 6].  Plaintiff requested from Evolve, and later received, paper copies of these documents.  [Id.]  Plaintiff further requested from Evolve explanations regarding several questions that she had about the disclosure documents.  [Id. at 6–7].  However, on September 22, 2015, before Plaintiff had a chance to speak with an Evolve representative or an attorney of her own about these questions, Plaintiff chose to sign the disclosure documents because she was "concerned about closing on time."  [Id. at 7].  Plaintiff now avers that she felt "rushed through the signing process."  [Id.] The next day, an Evolve representative called Plaintiff and assured her that "the seller's unilateral change to [Plaintiff's] offer made no significant difference to her payments and . . . assured [Plaintiff] that everything was fine with the numbers." [Id.]

November 3, 2015, was the closing date. [Id. at 9]. In preparation for that event, an Evolve attorney[4] – who was also representing Plaintiff in relation to the purchase[5] – emailed Plaintiff and asked that she meet at the Worcester Registry of Deeds to sign the closing documents. [Id.] Plaintiff states that when she met with this attorney at the closing, the attorney was "unhelpful and did not answer any of [Plaintiff's] questions" in relation to either the loan or the Property. [Id. at 9–10]. Despite not receiving satisfactory answers to her questions, Plaintiff ultimately signed the closing documents and completed her purchase of the Robertson Road property that day since she felt that otherwise she would "have nowhere to live and [would] lose her deposit if she did not sign." [Id. at 10].

### iii.    The Mortgage and its Assignment from Evolve to PennyMac

Plaintiff claims that on the closing date, she executed a note in the amount of $127,645.00 and a mortgage (collectively the "Mortgage") securing the note on the Property in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") acting solely as nominee for Evolve. [Id. at 11; 29–40]. The Mortgage was underwritten by the U.S. Fair Housing Administration. [Id. at 10]. The Mortgage was subsequently recorded at the Worcester County Registry of Deeds in Book 54528, Page 393. [Id. at 3]. On January 8, 2019, Evolve assigned the Mortgage to PennyMac, with the assignment being recorded at the Worcester County Registry of Deeds in Book 59922, Page 293. [Exhibit R, id. at 101].

### iv.    Plaintiff's Sale of the Property

Although she did not plead as much, Plaintiff must have fallen behind on her monthly payments at some point after the origination of the Mortgage, because she received a document

---

[4] Evolve's attorney was named Ms. Meghan Roche.
[5] Plaintiff generally alleges that Evolve did not provide her with adequate legal representation throughout the origination process. [See e.g., ECF No. 1-1 at 6].

entitled "Notice of Foreclosure Sale" from PennyMac on July 12, 2019.  [Id. at 12–13].  Among other things, this document notified Plaintiff that the Property was scheduled to be sold through a foreclosure sale at public auction on September 3, 2019.  [Id. at 129].  Plaintiff did not plead many details regarding the sale of the alleged property in her Original Complaint, but she did allege that she made "cosmetic and code changes" to the home in September 2020, [id. at 17], and that the home was sold on October 15, 2020,  [id. at 18].  To be clear, Plaintiff did not allege in her Original Complaint that a foreclosure sale ultimately occurred or that PennyMac took any further actions in preparation for foreclosing on the Property other than sending the July 12, 2019, notice document.  Plaintiff further generally alleged that the stress of the contact with Evolve and PennyMac, along with the sale of her home, caused her to suffer severe emotional distress, anxiety, depression, despair and embarrassment.  [E.g., id. at 15].

### v.    Relevant Allegations Contained Only in the Amended Complaint [ECF No. 29-1]

In her Amended Complaint, Plaintiff offered several additional, relevant factual allegations.  Among those, Plaintiff asserted that on December 22, 2016, she was in a car accident that led to an undefined disability that prevented her from returning to work.  [ECF No. 29-1 at 14].  Further, Plaintiff alleges that she made twenty-three mortgage payments in full and on time from the origination of the mortgage through October 2017.  [Id. at 19].  She further averred that she made a late, full payment in November 2017, and that she made partial payments on her December 2017 and January 2018 obligations.  [Id.] Plaintiff explained that on December 1, 2017, her mortgage delinquency began.  [Id.]

Plaintiff also added some factual details relating to her contact with PennyMac after the delinquency began.  Specifically, she alleged that in February 2018, she received two communications from PennyMac's attorney: one informing her that the PennyMac intended to

"commence a foreclosure" on the mortgaged property and the second informing her of her right to request a modified mortgage loan. [Id. at 20–21]. In March 2018, Plaintiff entered a "Special Loan Forbearance Plan" with PennyMac – which she successfully completed in December 2018. [Id. at 22]. In Spring 2020, Plaintiff requested and was ultimately denied a permanent loan modification from PennyMac and PennyMac's denial was premised on Plaintiff's failure to timely provide necessary documentation. [Id. at 23].

In September 2020, Thompson filed bankruptcy in the District of Massachusetts. [Id. at 29]. PennyMac later sought relief from the bankruptcy stay "for the purpose of: (i) exercising its rights under its agreements with the debtor and under applicable law, including, without limitation, taking possession of the mortgaged premises and/or foreclosing or accepting a deed in lieu of foreclosure of its mortgage . . . ." [Id. at 31 (emphasis omitted)]. U.S. Bankruptcy Court Judge Katz granted that motion and PennyMac then sent Plaintiff a packet of documents that included a copy of Judge Katz's order granting the motion for relief from stay. [Id. at 32]. In the wake of Plaintiff's concern that the property _would_ be foreclosed upon, she decided to sell the property in October 2020. [Id.] She stated that she received $50,000 from the sale but that all other proceeds were "withheld." [Id.]

### b. Relevant Procedural History

Plaintiff originally filed this case in Massachusetts Superior Court. [ECF No. 1-1]. PennyMac removed the case to this Court, arguing that this Court had both federal question jurisdiction (under 28 U.S.C. § 1331), and supplemental jurisdiction (under 28 U.S.C. § 1367). [ECF No. 1 at 3–4]. PennyMac moved to dismiss the Original Complaint, [ECF No. 7]. This Court subsequently granted that motion by electronic order. [ECF No. 34]. After the dismissal of the case against PennyMac, Evolve reported to the Court that Plaintiff had apparently amended the complaint that was pending against Evolve. [ECF No. 32; ECF No. 29-1]. The Court then directed

Plaintiff to serve Evolve with a copy of that Amended Complaint, [ECF No. 40], which Plaintiff timely did. [ECF No. 45]. Evolve then moved to dismiss the Amended Complaint. [ECF No. 47].

The causes of actions pending against Evolve are similar but not identical to those that were lodged against PennyMac. Accordingly, the Court has detailed Plaintiff's claims against Defendant in the tables below.[6]

### i.    Plaintiff's Case Against PennyMac

| Count # | Cause of Action |
|---|---|
| I | Discriminatory Origination |
| II | Violation of [Fair Housing Act][7] Underwriting Standards |
| III | Unconscionable Origination[] and Economic Coercion Mortgage Prohibited |
| IV | Mortgage Void, Given Violation of Public Interest Law |
| V | Violation of C.A.R.E.S.[8] Act and Federally Ordered Moratorium on [Fair Housing Act] Acceleration and Foreclosures |
| VI | Mortgage Never Legally Consummated Violation of 940 CMR 3 & 8, 209 CMR 18 |
| VII | Emotional Distress |
| VIII | Duress |
| IX | Consumer Violation for Triple Damages |
| X | Violation of the Americans with Disabilities [Act][9] |
| XI | Unjust Enrichment and Violation of 940 CMR 7.00 |

### i.    Plaintiff's Case Against Evolve

| Count # | Cause of Action |
|---|---|
| I | Discriminatory Origination |
| II | Violation of [Fair Housing Act][10] Underwriting Standards |
| III | Unconscionable Origination[] and Economic Coercion Mortgage Prohibited |

---

[6] The following tables contain verbatim descriptions of Plaintiff's causes of action.
[7] [ECF No.1-1 at 21].
[8] [Id.]
[9] [Id. at 23].
[10] [ECF No. 29-1 at 34].

| IV | Mortgage Never Legally Consummated Violation of 940 CMR 3 & 8, 209 CMR 18 |
| V | Mortgage Void, Given Violation of Public Interest Law |
| VI | Failure to Convey Title by Mortgage Deed |
| VII | Mortgage Unenforc[ea]ble Given Fiduciary Violations |
| VIII | Non-Existence of Debt and Failure to Comply with Uniform Commercial Code and RESPA[11] |
| IX | Creation of False Pretense of Chain of Title and 'Jurisdiction and Authority' to Foreclose |
| X | Violation of C.A.R.E.S. Act and Federally Ordered Moratorium on [Fair Housing Act][12] Acceleration and Foreclosures |
| XI | Emotional Distress |
| XII | Duress |
| XIII | Consumer Violation for Triple Damages |
| XIV | Violation of the Americans with Disabilities [Act] |
| XV | Unjust Enrichment and Violation of 940 CMR 7.00 |

### c.  This Court's Jurisdiction and the Applicable Substantive Law

"Federal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it.'" Industria Lechera De P.R. v. Beiró, 989 F.3d 116, 120 (1st Cir. 2021) (quoting Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010)). While no party has raised this issue, the Court has independently determined that it has subject matter jurisdiction, under 28 U.S.C. § 1331 (i.e., federal question jurisdiction), over several of Plaintiff's claims, many of which allege violations of provisions of the U.S. Constitution, and federal statutes and regulations.  [See ECF No. 1-1 at 20–24; ECF No. 29-1 at 33–40].  Both the Original Complaint and the Amended Complaint also assert claims arising under Massachusetts state law. [See ECF No. 1-1 at 20–24; ECF No. 29-1 at 33–40].

In a civil action where a district court has original jurisdiction, the court has supplemental jurisdiction over all related claims that form part of the "same case or controversy."  28 U.S.C. § 1367(a).  This Court has jurisdiction where state and federal claims derive from "a common

---

[11] [Id. at 36].
[12] [Id. at 37].

nucleus of operative fact," and when the claims are such that a party would "ordinarily be expected to try them all in one judicial proceeding." United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966).  Here, the Court finds that those state law claims derive from a "common nucleus of operative fact," such that the Court also has subject-matter jurisdiction over those claims. Id. Furthermore, Defendants have not challenged this Court's personal jurisdiction over them.  Venue is proper in this judicial district.

It is undisputed that federal law supplies the substantive rules of decision for each of Plaintiff's federal law claims and that Massachusetts law supplies the substantive rules of decision for each of her state law claims.

## III.   LEGAL STANDARDS

### a.   Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2009)).  At the pleading stage, a plaintiff need not demonstrate that she is likely to prevail, but "her claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" García-Catalán v. United States, 734 F.3d 100, 102–03 (1st Cir. 2013) (quoting Iqbal, 556 U.S. at 678).  With respect to all claims of fraud, plaintiffs are required to "state with particularity the circumstances" that constitute the alleged fraud. See Fed. R. Civ. P. 9(b).

When deciding a 12(b)(6) motion to dismiss, a court must "accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012). In determining whether a complaint has crossed the plausibility threshold, courts conduct a two-part, context-specific inquiry.  First, the court must

separate "'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" García-Catalán, 734 F.3d at 103 (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)).   Second, the court must determine whether the factual allegations are sufficient to support "'the reasonable inference that the defendant is liable for the misconduct alleged'" García-Catalán, 734 F.3d at 103 (quoting Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011)).   Conducting this inquiry requires a court to draw on its "judicial experience and common sense."  Iqbal, 556 U.S. at 679.

### b.  Pro Se Pleadings

When, as here, a plaintiff is proceeding pro se, the Court must construe her filings liberally.  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Dutil v. Murphy, 550 F.3d 154, 158 (1st Cir. 2008) ("[W]e hold pro se pleadings to less demanding standards than those drafted by lawyers and endeavor, within reasonable limits, to guard against the loss of pro se claims due to technical defects."). Indeed, a pro se complaint, "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers . . . .'" Erickson, 551 U.S. at 94 (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  That said, pro se litigants "still must comply with procedural and substantive law" and "[d]ismissal of a *pro se* complaint is appropriate when the complaint fails to state an actionable claim."  Harihar v. United States Bank Nat'l Ass'n, No. 15-cv-11880-ADB, 2017 U.S. Dist. LEXIS 50596, at *14 (D. Mass. Mar. 31, 2017) (citations omitted); Chum v. United States Bank, N.A., No. 14-14683-GAO, 2016 U.S. Dist. LEXIS 4168, at *3 (D. Mass. Jan. 13, 2016) ("While pro se filings are read liberally, this Court is not required [to] read into the complaint facts which do not appear.").

IV.    **PLAINTIFF'S CASE AGAINST PENNYMAC**

| Count # | Cause of Action |
|---|---|
| I | Discriminatory Origination |
| II | Violation of [Fair Housing Act][13] Underwriting Standards |
| III | Unconscionable Origination[] and Economic Coercion Mortgage Prohibited |
| IV | Mortgage Void, Given Violation of Public Interest Law |
| V | Violation of C.A.R.E.S.[14] Act and Federally Ordered Moratorium on [Fair Housing Act] Acceleration and Foreclosures |
| VI | Mortgage Never Legally Consummated Violation of 940 CMR 3 & 8, 209 CMR 18 |
| VII | Emotional Distress |
| VIII | Duress |
| IX | Consumer Violation for Triple Damages |
| X | Violation of the Americans with Disabilities [Act][15] |
| XI | Unjust Enrichment and Violation of 940 CMR 7.00 |

a.   **The Original Complaint's Origination Counts (Counts I, III, IV, VI, VIII)**

Five of the eleven causes of action lodged against PennyMac in the Original Complaint principally concern the origination of the Mortgage, which occurred in the Fall of 2015. Specifically, these are Counts I, III, IV, VI, and VII (the "Original Complaint's Origination Counts"). After careful review, the Court **GRANTED** PennyMac's motion to dismiss each of these Origination Counts for two independently sufficient reasons.

First and most fundamentally, Plaintiff did not allege any facts that connected *PennyMac* to any of the events which occurred in relation to the origination of the Mortgage. Indeed, after alleging that the origination process occurred in 2015, Plaintiff went on to state that the assignment to PennyMac did not occur until 2019. [ECF No. 1-1 at 10-11]. Therefore, since there is no allegation that PennyMac was involved in any way with the origination of the Mortgage, each of

---

[13] [ECF No. 1-1 at 21].
[14] [Id.].
[15] [Id. at 23].

the Origination Counts against them must be dismissed.  See e.g., Educadores Puertorriqueños en Acción v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004) (explaining that a "complaint should at least set forth minimal facts as to who did what to whom, when, where, and why—although why, when why means the actor's state of mind, can be averred generally"). See Burnham v. Dudley Dist. Ct., No. 15-cv-40031-DHH, 2015 WL 5698418, at *5 (D. Mass. Sept. 28, 2015) ("[When] a plaintiff brings a claim against multiple defendants, the plaintiff must . . . draft [their] complaint in such a manner that it is clear what the alleged factual allegations and legal claims are against each individual defendant" and they "cannot simply refer to the defendants collectively where it cannot be reasonable inferred that all the defendants engaged in the alleged misconduct.")

Second, even if the Original Complaint had plausibly alleged that PennyMac was involved in the origination process, each of those claims would be time-barred.  As PennyMac rightly pointed out in its memorandum in support of its motion to dismiss, none of the Origination Counts could be brought more than seven years after the alleged injury.  [ECF No. 8 at 8–9].  Moreover, the Court finds that none of the allegations contained in the Amended Complaint change this analysis.  Therefore, each of the Original Complaint's Origination Counts are **DISMISSED** against PennyMac.

### b. Count II – Violation of FHA Underwriting Standards

Count II of the Original Complaint alleges that PennyMac violated the FHA's underwriting standards.  [ECF No. 1-1 at 21].  Specifically, Plaintiff alleges that PennyMac "violated 24 C.F.R. § 203.500, 24 C.F.R. § 203.606(a)[, which] is codified in Subpart C of Part 203, 24 C.F.R. §203.604[,] by not providing regulatory required notice of the right to a face-to-face meeting within 3 pay periods of delinquency and failed to provide in person notification." [Id.]  This cause of action must be dismissed against PennyMac because Plaintiff failed to plead a necessary

element – namely that PennyMac <u>actually</u> commenced foreclosure proceedings or acquired title to her property.

The first regulation that PennyMac is accused of violating provides that mortgagees fulfill certain obligations before "commenc[ing] foreclosure or acquir[ing] title to a property . . . ." 24 CFR § 203.500. The second provides that:

> ***Before initiating foreclosure***, the mortgagee must ensure that all servicing requirements of this subpart have been met. The mortgagee may not commence foreclosure for a monetary default unless at least three full monthly installments due under the mortgage are unpaid after application of any partial payments that may have been accepted but not yet applied to the mortgage account. In addition, ***prior to initiating any action required by law to foreclose the mortgage***, the mortgagee shall notify the mortgagor in a format prescribed by the Secretary that the mortgagor is in default and the mortgagee intends to foreclose unless the mortgagor cures the default.

24 CFR § 203.606(a) (emphasis added).

Here, however, none of the allegations contained in the Original Complaint indicate that PennyMac ever actually initiated foreclosure proceedings, let alone acquired title relative to the mortgaged property. Indeed, Plaintiff alleges that *she* sold the home on October 15, 2020, out of fear of moving to a homeless shelter. [ECF No. 1-1 at 18]. Moreover, the Court finds that none of the allegations contained in the Amended Complaint change this analysis. Although the Amended Complaint does allege that PennyMac sought relief from the bankruptcy stay to give itself the option to initiate foreclosure proceedings, [ECF No. 29-1 at 31], the Amended Complaint, like the Original Complaint, lacks any allegation that PennyMac *actually* initiated foreclosure proceedings. Instead, Plaintiff re-affirmed that *she* decided to sell the property, albeit out of fear that a foreclosure might occur. [Id. at 32]. PennyMac cannot be held accountable for violating regulations when

there is no allegation that the triggering event for those regulations occurred. Therefore,

Count II of the Original Complaint is **DISMISSED** against PennyMac.

### c. <u>Count V - Violation of C.A.R.E.S.[16] Act and Federally Ordered Moratorium on FHA Acceleration and Foreclosures</u>

Count V of the Original Complaint alleges that PennyMac violated the C.A.R.E.S. Act

when it "notified Plaintiff that she was in default and defined an end to the cure period/acceleration

date" and "continued and attempted to carry out an eviction." [ECF No. 1-1 at 21–22]. In relevant

part, the C.A.R.E.S. Act provides that:

> Except with respect to a vacant or abandoned property, a servicer of a Federally backed mortgage loan may not initiate any judicial or non-judicial foreclosure process, move for a foreclosure judgment or order of sale, or execute a foreclosure-related eviction or foreclosure sale for not less than the 60-day period beginning on March 18, 2020.

15 U.S.C. § 9056(c)(2).

Plaintiff's claim fails for several independently sufficient reasons. First and foremost, there

is a broad consensus amongst federal courts that the C.A.R.E.S. Act's foreclosure moratorium did

not create a private of action, so the claim fails on that basis, alone. <u>See e.g.</u>, <u>Pena v. PHH Mortg.</u>

<u>Corp.</u>, No. 3:20-cv-02830-K-BT, 2022 WL 398399, at \*3 (N.D. Tex. Jan. 24, 2022), <u>report and</u>

<u>recommendation adopted</u>, 2022 WL 394759 (Feb. 9, 2022) ("[T]he CARES Act's foreclosure

moratorium does not create a private right of action—every district court to consider this question

has held as much."). Second, the complained-of action that PennyMac took, namely sending the

July 12, 2019 "Notice of Foreclosure Sale" -- occurred *before* the foreclosure moratorium took

effect. <u>See</u> 15 U.S.C. § 9056(c)(2). Third and finally, the Original Complaint did not contain any

plausible allegations that PennyMac ever took any of the following actions: initiated a judicial or

non-judicial foreclosure process; moved for a foreclosure judgment or order of sale or executed a

---

[16] [ECF No. 1-1 at 21].

foreclosure-related eviction or foreclosure sale.  See id.  Moreover, the Court finds that none of the allegations contained in the Amended Complaint change this analysis.  Therefore, Count V of the Original Complaint is **DISMISSED** against PennyMac.

### d.  Count VII – Emotional Distress

Count VII of the Original Complaint alleges that PennyMac "discriminat[ed]" against Plaintiff and caused her to suffer "irreparable damage" from the sale of the Property, including "lifelong emotional damage."  [ECF No. 1-1 at 22].  Although Plaintiff did not specify whether she intended to assert a claim for negligent infliction of emotional distress ("NIED") or intentional infliction of emotional distress ("IIED"), the Court will, as it must, liberally construe Plaintiff's pleading and explore whether she has stated either type of claim.

To prevail on a claim for negligent infliction of emotional distress under Massachusetts law, Plaintiff must plead: "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by object symptomatology, i.e., objective corroboration of the emotional distress alleged; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case."  Brooks v. Martha's Vineyard Transit Auth., 433 F. Supp. 3d 65, 77 (D. Mass. 2020).  And, as with any sort of negligence, "negligence in the context of an emotional distress claim requires that the defendant have owed plaintiff a duty that was breached in some way."  Delmonte v. Laidlaw Env't Servs., Inc., 46 F. Supp. 2d 89, 96 (D. Mass. 1999).  To state a claim for IIED under Massachusetts law, Plaintiff must show (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was " 'extreme and outrageous,'" was "'beyond all possible bounds of decency,'" and was "'utterly intolerable in a civilized community. . . .'"; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was "'severe'" and of such a nature "'that no reasonable man

could be expected to endure it.'"  Agis v. Howard Johnson Co., 355 N.E.2d 315, 318–19 (1976)

(quoting Restatement (Second) of Torts § 46 cmt. d (A.L.I. 1965)).

      As to an NIED claim, the Original Complaint does not plausibly allege that PennyMac

"discriminated" or otherwise acted unlawfully against Plaintiff, nor does it plausibly allege that

PennyMac was negligent in some way.  Instead, it only alleges that PennyMac took actions that it

was legally allowed to take, such as sending Plaintiff a "Notice of Foreclosure Sale" after a lengthy

period of delinquency.  [E.g., ECF No. 1-1 at 12–13].  Accordingly, any NIED claim must be

**DISMISSED**.  Plaintiff has also not stated an IIED claim, principally because she has not plausibly

alleged that any of PennyMac's actions were "'extreme and outrageous,'" "'beyond all possible

bounds of decency,'" and "'utterly intolerable in a civilized community.'"  See Agis, 355 N.E.2d

at 319 (quoting Restatement (Second) of Torts § 46 cmt. d). On the contrary, PennyMac's alleged

actions were merely of the kind that mortgagees have the right to take in the face of certain

delinquencies.  In short, Plaintiff's IIED-related allegations fall short of amounting to conduct so

extreme and outrageous as to shock the conscience.  Accordingly, any IIED claim must be

**DISMISSED.**

      Furthermore, the Court finds that none of the allegations contained in the Amended

Complaint change these NIED and IIED analyses.  Although Plaintiff certainly added additional

details about PennyMac's efforts to reserve its rights to eventually foreclose (by, among other

things, seeking a relief from the bankruptcy stay), none of these alleged actions were either

negligent or extreme and outrageous.  The Court does not doubt that the overall circumstances

were quite stressful to Plaintiff, but it finds that she has not stated a legal claim.  Therefore, Count

VII of the Original Complaint is **DISMISSED** against PennyMac.

### e.  **Count IX – Consumer Protection Violation**

Count IX of the Original Complaint alleges that PennyMac committed unfair and deceptive

acts that violated Massachusetts' consumer protection statute, Mass. Gen. Laws ch. 93A § 2. [ECF

No. 1-1 at 23].  In relevant part, the statute declares unlawful any "[u]nfair methods of competition

and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ."  M.G.L.

ch. 93A § 2(a).  As the Massachusetts Appeals Court has recently explained,

> It is well settled that what qualifies as an unfair or deceptive trade practice is not
> strictly limited by common law concepts; rather, in determining unfairness, "[w]e
> look to (1) whether the practice . . . is within at least the penumbra of some
> common-law, statutory, or other established concept of unfairness; (2) whether it is
> immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes
> substantial injury to consumers . . . ."

Wheaton et al v. Colletta et al, 105 Mass. App. Ct. 1132 (Mass App. Ct. 2025) (quoting

UBS Fin. Servs., Inc. v. Aliberti, 133 N.E.3d 277, 292–93 (Mass. 2019)).

In her Original Complaint, Plaintiff did not plausibly allege that PennyMac engaged

in any unfair or deceptive practice relative to either the origination of the Mortgage or in

the events leading up to Plaintiff's sale of the mortgaged property.  Instead, as discussed

supra, PennyMac's alleged conduct amounts to nothing more than lawful and typical

actions taken in the wake of a mortgagor's continued default.  Moreover, the Court finds

that none of the allegations contained in the Amended Complaint change this analysis.

Therefore, Count IX of the Original Complaint is **DISMISSED** against PennyMac.

### f.  **Count X – ADA Violation**

With Count X, Plaintiff alleges that PennyMac violated the ADA by (a) denying Plaintiff

loan modifications; and (b) refusing to "consider waiting and modifying when [Plaintiff's] social

security disability was to be approved."  [ECF No. 1-1 at 23].  Construing the Original Complaint

liberally, Plaintiff appears to be attempting to state an ADA discrimination claim.  [See id.]; Fed.

R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

To show a discriminatory denial of services under the ADA, Plaintiff must demonstrate

that (1) she is a "qualified individual" with a disability; (2) that the defendant is subject to the

ADA; and (3) that she was "denied the opportunity to participate in or benefit from defendants'

services, programs, or activities, or [was] otherwise discriminated against by defendants, by reason

of [her] disabilit[y]." E.g. Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003).

This claim fails.  For starters, other than generally alleging that she "filed for disability"

after being involved in a December 2016 car accident, Plaintiff has not plausibly alleged that she

is a qualified individual for purposes of the ADA.  Second, Plaintiff has not plausibly alleged that

Evolve committed any discriminatory acts against her, and even if she had, she has not shown any

nexus between those acts and her alleged disability.  Accordingly, Count XIV of the Original

Complaint is **DISMISSED** against PennyMac.

### g.  Count XI - Unjust Enrichment and Violation of 940 CMR 7.00

As a threshold matter, the Court finds it difficult to discern the exact nature of Plaintiff's

Count XI claim.   Plaintiff contends that "[t]he purported assignment [of the Mortgage] violated

equal treatment and therefore, could not convey an interest in Plaintiff's property . . . [and that]

[t]he purported assignment literally does not identify any property interest that it states it 'grants.'"

[ECF No. 1-1 at 23–24].  Construing the pleading liberally, the Court finds that Plaintiff attempts

to allege that PennyMac has been unjustly enriched because Evolve's assignment of mortgage to

PennyMac (a) violated equal treatment; and (b) failed to convey any interest in the Property to

PennyMac.  This claim is baseless and must be dismissed.  The text of the assignment itself

provides that:

> For value received, Mortgage Electronic Registration Systems, Inc., as nominee for Evolve Bank & Trust . . . hereby grants, assigns, and transfers to: PennyMac Loan Services, LLC . . . under that certain Mortgage dated November 3, 2015 executed by: . . . Dawn M. Thompson . . . [f]or Mortgage Electronic Registration Systems, Inc., as nominee for Evolve Bank & Trust . . . in the amount of $127,645.00, recorded 11/03/2015 as Instrument No.: 2015 00116618 in Book/Volume: 54529 Page 1 of the Official Records of Worcester County, Massachusetts[.] Property Address: 2 Robertson Rd., Worcester, Massachusetts 01602.

[Exhibit R, ECF No. 1-1 at 103].

The assignment provides in plain English that Evolve validly assigned its interest in the Mortgage to PennyMac. Thus, the assignment is not, as Plaintiff contends, invalid in any way. And further, it clearly provides that Evolve conveyed an interest to PennyMac. Accordingly, Plaintiff's Count XI claim against PennyMac, as stated in the Original Complaint, must be dismissed. Furthermore, the Court finds that none of the allegations contained in the Amended Complaint change this analysis. Therefore, Count XI of the Original Complaint is **DISMISSED** against PennyMac.

## V.    **PLAINTIFF'S CASE AGAINST EVOLVE**

### a.    **The Amended Complaint's Origination Counts (Counts I, III, IV, V, VI, VII, VIII, XII, and XIII)**

Nine of the fifteen causes of action that Plaintiff lodged against Evolve in the Amended Complaint principally concern the origination of the Mortgage, which occurred in the Fall of 2015. Specifically, these are Counts I, III, IV, V, VI, VII, VIII, XII, and XIII (the "Amended Complaint's Origination Counts"). The Court need not and will not wade into the merits of these various claims, because each of them are time-barred. As Evolve rightly detailed in its memorandum in support of its motion to dismiss, each of the possibly applicable statutes of limitations on these claims have run. [ECF No. 48 at 11]. Indeed, whether a three, four, five, or six-year statute of limitations applies to each of Plaintiff's claims, the complained-of conduct occurred more than

seven years ago.  Therefore, since the facts are clear from the "face of the plaintiff's pleadings"
that each of the possibly applicable statute of limitations has run, each of the Amended Complaint's
Origination Counts are hereby **DISMISSED.**  See e.g., Trans-Spec Truck Serv., Inc. v. Caterpillar,
Inc., 524 F.3d 315, 320 (1st Cir. 2008) ("Where the dates included in the complaint show that the
limitations period has been exceeded and the complaint fails to 'sketch a factual predicate' that
would warrant the application of either a different statute of limitations period or equitable
estoppel, dismissal is appropriate." (quoting LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507,
510 (1st Cir. 1998))).

### b.  Count II – Violation of FHA Underwriting Standards

Count II of the Original Complaint alleges that Evolve violated the FHA's underwriting
standards.  [ECF No. 1-1 at 21].  Specifically, Plaintiff alleges that PennyMac "violated 24 C.F.R.
§ 203.500, 24 C.F.R. § 203.606(a) is codified in Subpart C of Part 203, 24 C.F.R. §203.604 by not
providing regulatory required notice of the right to a face-to-face meeting within 3 pay periods of
delinquency and failed to provide in person notification." [Id.] This cause of action must be
dismissed against Evolve because there are no allegations whatsoever that Evolve ever
"commence[d] foreclosure or acquire[d] title to [the] property."  See 24 C.F.R. § 203.500.  On the
contrary, Evolve assigned its interest in the Mortgage to PennyMac on January 8, 2019, which is
well before *PennyMac* sent the "Notice of Foreclosure Sale" document to Plaintiff.  Accordingly,
Count II must be **DISMISSED** against Evolve.

### c.  Count IX – Creation of False Pretense of Chain of Title and "Jurisdiction and Authority" to Foreclose

Count IX of the Amended Complaint alleges that Evolve created the false pretense of a
chain of title as well as the "jurisdiction and authority" to foreclose upon the mortgaged property.
As a threshold matter, the Court notes that this is not a cognizable cause of action.  However,

construing the Amended Complaint liberally, it seems that Plaintiff intended to levy a fraud-related cause of action against Evolve. Assuming that this was her intention, however, the fact remains that she has failed to state such a claim against Evolve. The Amended Complaint contains no plausible allegations that Evolve acted fraudulently towards Plaintiff with regards to its assignment of the Mortgage to PennyMac. And, moreover, the assignment occurred several months before *PennyMac* sent Plaintiff the "Notice of Foreclosure Sale" document. Accordingly, Plaintiff's Count IX-related allegations "'merely offer legal conclusion[s] couched . . . as fact[] [and] threadbare recitals of the elements of a cause of action," and therefore do not state a claim. <u>See</u> <u>Rodríguez-Ramos v. Hernández-Gregorat</u>, 685 F.3d 34, 40 (1st Cir. 2012) (quoting <u>Ocasio-Hernández v. Fortuño-Burset</u>, 640 F.3d 1, 12 (1st Cir. 2011)). Accordingly, Count IX must be **DISMISSED** against Evolve.

### d. <u>Count X -- Violation of C.A.R.E.S. Act and Federally Ordered Moratorium on FHA Acceleration and Foreclosures</u>

With Count X, Plaintiff contends that Evolve "notified Plaintiff that she was in default and defined an end to the cure period/acceleration date during the Covid moratorium" and that it "continued and attempted to carry out an auction during the Covid moratorium." [ECF No. 29-1 at 37]. This claim must be dismissed. As discussed <u>supra</u>, the Amended Complaint did not plausibly allege that Evolve ever took any foreclosure-related actions against Plaintiff. Moreover, Evolve had assigned the Mortgage to PennyMac more than one year before the C.A.R.E.S. Act's forfeiture moratorium took effect. [<u>See id.</u> at 3]; 15 U.S.C. § 9056(c)(2). Accordingly, Count X must be **DISMISSED** against Evolve.

### e. <u>Count XI – Emotional Distress</u>

Count XI of the Amended Complaint alleges that Evolve "discriminat[ed]" against Plaintiff and caused her to suffer "irreparable damage" from the sale of the Property, including "lifelong

emotional damage." [ECF No. 29-1 at 38]. In accordance with the Court's treatment of Plaintiff's similar claim against PennyMac, the Court will explore whether Plaintiff has stated a claim for either NIED and/or IIED against Evolve.

Applying the same legal standards for these causes of action articulated supra, the Court easily concludes that Plaintiff has not stated a claim for NEID or IIED against Evolve. Crucially, Plaintiff has not included any timely, plausible allegations that Evolve committed any negligent actions against Plaintiff, and it certainly does not plausibly allege any "extreme and outrageous" conduct. Accordingly, Count XI must be **DISMISSED** against Evolve.

### f.  Count XIV -- Violation of the Americans with Disabilities Act

With Count XIV, Plaintiff alleges that Evolve violated the ADA by (a) denying Plaintiff loan modifications; and (b) refusing to "consider waiting and modifying when [Plaintiff's] social security disability was to be approved." [ECF No. 29-1 at 39]. Construing the Amended Complaint liberally, Plaintiff appears to be attempting to state an ADA discrimination claim. [See id.]; Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). Applying the legal standard for this cause of action, which was articulated supra, the Court easily concludes that Plaintiff has failed to state an ADA discrimination claim against Evolve.

Other than alleging she "filed for disability" after being involved in a December 2016 car accident, Plaintiff has not plausibly alleged that she is a qualified individual for purposes of the ADA. Second, Plaintiff has plausibly alleged that PennyMac committed any discriminatory acts, and even if she had, she has not shown any nexus between those acts and her alleged disability. Accordingly, Plaintiff's ADA claim against PennyMac, as stated in the Original Complaint, must be dismissed. Furthermore, the Court finds that none of the allegations contained in the Amended Complaint change this analysis. Therefore, Count X of the Original Complaint is **DISMISSED** against PennyMac.

g. **Count XV -- Unjust Enrichment and Violation of 940 CMR 7.00**

As a threshold matter, the Court finds it difficult to discern the exact nature of Plaintiff's Count XV claim, which is very similar to Count XI of the Original Complaint.  Plaintiff contends that "[t]he purported assignment [of the Mortgage] violated equal treatment and therefore, could not convey an interest in Plaintiff's property . . . [and that] [t]he purported assignment literally does not identify any property interest that it states it 'grants.'  [ECF No. 1-1 at 23–24].  The Court DISMISSES Count XV of Amended Complaint against Evolve for the very same reasons that it dismissed Count XI of the Original Complaint against PennyMac.  In short, Plaintiff has not plausibly alleged that the assignment of the Mortgage from Evolve to PennyMac was invalid, nor has she plausibly alleged that the assignment in any way "violated equal treatment."  Accordingly, Count XV is **DISMISSED** against PennyMac.

## VI.    RESOLUTION OF OTHER PENDING MOTIONS

Since the Court has now dismissed Plaintiff's case against PennyMac and her case against Evolve, the following motions, which are pending on the docket are now **DENIED AS MOOT:** [ECF Nos. 43, 44, 51, 55, 56, 57, 58, 59, 60, 63, 65, 66, 67, 69, 71, 72, 73, 74, 75, 76, 77, 78, 79].

## VII.    PLAIN LANGUAGE SUMMARY FOR PRO SE PLAINTIFF

Your case against PennyMac and your case against Evolve are being DIMISSED.  Your claims against PennyMac fail for a number of reasons.  First, PennyMac cannot be held liable for your claims relating to the origination of the mortgage, since they were not involved in any way with that process.  Your remaining claims against PennyMac were dismissed because you have not plausibly alleged that PennyMac actually initiated foreclosure proceedings upon you – instead you chose to sell your home.  In terms of your case against Evolve, your origination-related claims are time-barred, meaning that the time limit for you to bring your claims against Evolve had run

before you filed this suit.  Your remaining claims against Evolve fail primarily because, after it assigned the mortgage to PennyMac in 2019, Evolve was not involved in any way with the handling of your mortgage.  Therefore, Evolve cannot be held liable for, among other things, actions that PennyMac took to preserve its rights to foreclose upon you.

Since you have already amended your complaint at least once, [see ECF No. 29-1], you are not allowed to further amend it.  This case is dismissed.

## VIII.    CONCLUSION

For the foregoing reasons, PennyMac's motion to dismiss, [ECF No. 7], was **GRANTED** and Evolve's motion to dismiss, [ECF No. 47], is also **GRANTED**.  Accordingly, this case is **DISMISSED**.

**So ordered.**

/s/ Margaret R. Guzman
Hon. Margaret R. Guzman
U.S. District Judge

Date: July 16, 2025